UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CYNTHIA A. LOGAN, et al., : NO. 1:09-CV-00885
:
    Plaintiffs, :
:
  v. : **OPINION AND ORDER**
:
SYCAMORE COMMUNITY SCHOOL :
BOARD OF EDUCATION, et al., :
:
    Defendants. :

    This matter is before the Court on Defendants City of Montgomery and Officer Paul Payne's Motion for Summary Judgment and Motion to Stay Discovery (doc. 56), Plaintiffs' Motion for Additional Discovery (doc. 57), Plaintiffs' Response in Opposition to Summary Judgment (doc. 58), and Defendants' Replies (docs. 64, 65). For the reasons indicated herein, the Court GRANTS Defendants' Motion for Summary Judgment, and FINDS Paul Payne entitled to qualified immunity. The Court further GRANTS Plaintiffs' Motion for Additional Discovery as to the Defendant School Board.

**I. Background**

    As the Court has noted before, this is a tragic case. Plaintiffs are parents of decedent Jessica Logan, ("Logan"), who committed suicide on July 3, 2008, after allegedly suffering harassment from other high school students who were allegedly

"sexting"[1] a nude picture, from the neck down, of Logan among themselves (doc. 1). Plaintiffs allege that Logan sought help from a school guidance counselor, who referred her to the School Resource Officer, a City of Montgomery Police Officer, Defendant Paul Payne ("Payne")(Id.). Payne allegedly told Logan he could ask the students to delete the photo from their cell phones, but there was nothing else he could do (Id.). Payne further allegedly advised Logan to submit to a television interview on the subject of "sexting" (Id.). Plaintiffs allege that after the interview was televised, Logan's harassment became worse (Id.). Students allegedly chastised her with epithets and derogatory remarks, threw things at her while at school and at school-sponsored events, harassed her by phone and online, and even threw things at her during her graduation ceremony (Id.).

Plaintiffs brought suit against the students, now adults, who allegedly harassed decedent; against Sycamore Community Schools Board of Education ("School Board") for failing to protect Logan from harassment; and against Officer Payne as well as Payne's employer, the City of Montgomery. The students have since settled with Plaintiffs, leaving the School Board, Payne, and the City of Montgomery as Defendants in the case (doc. 66).

Defendants Payne and the City of Montgomery moved to

---

[1]"Sexting" is the act of sending sexually explicit messages or photographs, primarily between mobile phones.

dismiss Plaintiffs' claims against them, claiming Payne has qualified immunity (doc. 20). This Court found it appropriate to allow limited discovery: the deposition of Payne, the production of Payne's files on this matter, and information regarding Payne's authority and supervision (doc. 45). Such discovery is now complete and Defendants Payne and the City of Montgomery now renew their motion in the form of one requesting summary judgment (doc. 56). Plaintiffs have responded that in their view, the depositions of Payne and of Lauren Taylor, a close friend of Jessica Logan, show Plaintiffs' claims are supported (doc. 58). Plaintiffs claim Payne's testimony lacks credibility on the question of whether he knew Logan was targeted for harassment (Id.). Further, Plaintiffs request yet more discovery, stating they "cannot present facts essential to opposing the summary judgment motion without additional discovery" (doc. 57). Defendants have replied such that these matters are ripe for the Court's consideration.

**II. The Court's Review of the Discovery**

The Court has reviewed the depositions of Paul Payne and of Lauren Taylor, along with Taylor's Declaration. The Court finds the testimony of Payne and Taylor consistent as to the events preceding Jessica Logan's suicide.

Plaintiffs' principal theory is that Payne increased the risk of harm to decedent when he allegedly encouraged her to appear on television (doc. 1). In their briefing Plaintiffs also contend

Payne increased the risk of harm to Logan when he identified Logan as the person in the photo while confronting the students Logan accused of disseminating it (doc. 25). The Court will address the latter issue first.

The fact is that students dispersing the photo knew the identity of the person in the photo, Jessica Logan, before any school or police officials were involved. As such, the theory that Defendant Payne made Jessica Logan's situation worse by allegedly identifying her while confronting students does not hold up. Such allegation is not supported by the evidence before the Court. However, even if it were true that Payne identified Logan, the students already knew she was the person in the photo.[2]

The deposition testimony does not reflect Plaintiff's core theory either, that Payne encouraged Jessica Logan to submit to a television interview, and then he essentially told her he could do nothing to help her after the harassment intensified. Payne's testimony shows that he was confronted with "sexting," a recently developing issue, only one time prior to the time with Logan. The first time it happened, he contacted a prosecutor, who told him there was no criminal case to pursue, unless both the male student who had forwarded the image and the female student who had

---

[2] It remains unclear exactly who first transmitted the photo of Jessica Logan. The record reflects that Logan herself sent the photo to a male student, while Logan also suspected that some students obtained it from her cell phone. These questions are not at issue, but show the students knew who was in the photo.

4

created the image were <u>both</u> prosecuted, because they both were involved in disseminating the nude image of a minor. It shows he warned the students to delete the photo and to stop forwarding it. He led a mediation with the parents of both students where everyone apologized and parted in peace.

When Logan came to Payne for help, the deposition shows he followed the same general protocol.[3] He went to those accused of obtaining the image and told them to delete it and stop. He also led Logan to the guidance counselor for help. He contacted a prosecutor who told him, again, there was no case, this time, because the prosecutor reasoned Logan was not a minor.

Payne had met the TV reporter Sheree Paolello at an earlier event, and Paolello asked for contact information of the two students so she could interview them to create awareness about the problem of "sexting". Payne refused, stating it was not his place to provide Paolello with their contact information, but he could give the students the option to contact Paollelo if they desired. The minor student, on direction of her parents, declined, and her parents called Payne to let him know. Logan, on the other hand, agreed, with the blessing of her parents, so as to prevent the same thing from happening to another girl. Payne was surprised that Logan's parents agreed. Logan conducted the interview with

---

[3]As such, the Court sees no basis for the theory that Payne violated Logan's right to equal protection, as alleged in the Complaint.

5

her identity concealed and her voice changed.

Plaintiffs offer no testimony contradicting Payne's statement that they agreed with their daughter conducting the interview. The Court accepts such proposition as unrefuted evidence.

Payne saw the interview at some point, and later he told Logan she did a good job. According to Payne, Logan never came to him again to complain of worsening harassment or to ask for help, and nobody reported to him that she was being harassed. Lauren Taylor's testimony comports with Payne's, as she indicates she never reported Logan's harassment to Payne, and she did not know if Logan ever made such a report.

### III. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). Because qualified immunity is "an immunity from suit rather than a mere defense to liability.

. .it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As such, whether a defendant is entitled to qualified immunity is a question to be resolved at the earliest possible stage of litigation. Saucier v. Katz, 533 U.S. 194 (2001).

The Court must determine whether, in the context of a motion to dismiss, Plaintiffs have alleged facts that make out a violation of a constitutional right, and whether such right was "clearly established," such that a reasonable official would have known the right was being violated. Pearson, 129 S.Ct. 808, 816. In the context of a motion for summary judgment, similarly, the burden is on the Plaintiffs to show facts that make out a violation of a constitutional right, and to convince the court that such right was "clearly established." Id.

**IV. Defendants' Motion**

Defendants contend Plaintiffs' discovery failed to elicit any facts defeating Payne's entitlement to qualified immunity (doc. 56). Under DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989), Defendants contend they have no constitutional duty "to protect the life, liberty, and property of its citizens against invasion by private actors," here, Logan's fellow students, unless Plaintiffs can show facts that the "state-created danger" exception applies (Id.). Such exception requires Plaintiffs to show 1) an affirmative act by Payne that increased

7

the risk that Logan would be exposed to private acts of violence, 2) a special danger to Logan created by those acts, and 3) that Officer Payne knew or should have known his acts specifically endangered Logan, and he was deliberately indifferent to the danger (Id. citing McQueen v. Beecher Community Schools, 433 F.3d 460, 464, 469 (6th Cir. 2006).

Defendants argue the discovery ordered by the Court failed to produce any facts showing the state-created danger exception applies (Id.). Defendants contend there are no facts showing Payne encouraged Logan to participate in the television interview, that the alleged harassment intensified after the interview, that anyone informed Payne of any increased harassment, or that Payne ever told Logan "there was nothing he could do to help her" with the alleged harassment following the interview (Id.). As such, Defendants contend Payne is entitled to qualified immunity (Id.). Because Payne is entitled to qualified immunity, Defendants further contend his employer the City of Montgomery, cannot be held liable for any failure to train or supervise Payne (doc. 64, citing May v. Franklin County Commissioners, 437 F.3d 579, 586 (6th Cir. 2006)(where appellant failed to show that county authorities' conduct violated constitutional rights, as a matter of law, there could be no liability on the part of the municipality), Weeks v. Portage County Executives Offices, 235 F.3d 275, 279 (6th Cir. 2000)(where a deputy's actions did not violate an individual's

constitutional rights, there was no Section 1983 liability on the part of the municipal defendants as a matter of law)).

## V. Plaintiffs' Response

Plaintiffs contend that because Payne stated in his deposition he was unaware that Logan was undergoing harassment, this shows his testimony lacks credibility (doc. 58). Plaintiffs contend that Payne's testimony indicates he saw Logan's interview on television, in which Logan herself stated she was the target of harassment (Id.). Plaintiffs further contend that Payne's experience with the prior incident of "sexting" which led to harassment, and Payne's experience in teaching a "cyberbullying" class warning students and parents about the typical problem of "harassment, rumors, threatening and bullying," show he should have known Logan needed help (Id.). Plaintiffs argue Payne's notes show he classified Logan's contact with him as "Threats-Text Pix's" (Id.). This evidence, Plaintiffs contend, is sufficient to create a material issue of fact, or in the alternative, to defer a merits ruling until further discovery is completed (Id.). In a motion filed contemporaneously with their Response, Plaintiffs concede they cannot present facts essential to opposing Defendants' motion for summary judgment without additional discovery (doc. 57).

## VI. Defendants' Reply and Opposition to Further Discovery (docs. 64, 65).

Defendants reply that Plaintiffs cannot defeat qualified

immunity for Payne because Payne's conduct in talking with students who allegedly harassed Logan, and in providing Logan with the phone number of a television reporter cannot violate clearly established constitutional rights as conduct that would "shock the conscience" (doc. 64). Defendants further reply Plaintiffs cannot show how the actions or inactions of Payne increased the harassment of Logan (Id.). As for Plaintiff's request for more discovery, Defendants argue that even if such discovery could show Payne knew about Logan's alleged harassment, Plaintiffs still could not show that his conduct "shocks the conscience," or increased the risk of harm to Logan (Id.).

**VII. Analysis**

The Court agrees with Defendants that the time is ripe for a determination whether Payne is entitled to qualified immunity. The doctrine of qualified immunity is premised on the theory that, where appropriate, it can eliminate the burdens of discovery on public officials. Crawford v. Britton, 523 U.S. 574, 597-598 (1998). As such, here, where the Court already allowed limited discovery, the Court does not find it appropriate to continue such discovery regarding Defendant Payne's eligibility for qualified immunity.

The Court does not find facts in this matter showing that Defendant Payne exercised his power irresponsibly or otherwise acted unreasonably. Payne confronted those whom Logan told him

10

were involved in the "sexting" of her photo. He told them to stop. He asked for legal counsel to explore how else he could help Logan. The prosecutor told him there was no case.

The unrefuted facts further show Payne gave Logan the television reporter's phone number, that Logan's parents agreed Logan could conduct the interview, and that Payne was surprised that Logan's parents agreed. Plaintiffs cannot contend Payne's action "shocks the conscience" when they themselves agreed to the interview. The record shows Logan herself thought it would be a good thing to raise awareness about the pitfalls of "sexting."

Moreover, there is no evidence that the television interview exacerbated the harassment, only indications that the harassment continued unabated, both on and off the school grounds. "Liability under the state-created danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998). Plaintiffs have not shown that Payne "increased the risk of harm," to Logan.

Plaintiffs appear to seek further discovery to prove Payne knew about the risk of harm Logan faced so they could show he was deliberately indifferent to the danger posed to her after the television interview. The Court views such discovery request as a fishing expedition. Payne's deposition does not demonstrate an

indifference to Jessica Logan, but rather that he acted in good faith to help "put the fire out as soon as possible." The Court further agrees that as Payne is entitled to qualified immunity, no action lies against his employer, the City of Montgomery for failure to train or supervise Payne. May v. Franklin County Commissioners, 437 F.3d 579, 586 (6th Cir. 2006).

**VIII. Conclusion**

The Court finds Officer Payne entitled to qualified immunity. As such he and his employer, the City of Montgomery are DISMISSED from this case. However, the Defendant School board remains. The Court finds it appropriate to allow continued discovery as to the School Board's policies and actions with regard to the issues of "sexting" and harassment in this case. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

Accordingly, the Court GRANTS Defendants City of Montgomery and Officer Paul Payne's Motion for Summary Judgment and Motion to Stay Discovery (docs. 20, 56), and GRANTS Plaintiffs' Motion for Additional Discovery (doc. 57), to the extent that discovery may proceed as to Sycamore Community School Board of Education. The Court further SETS this matter for a status conference, 3:30 P.M. on March 1, 2011, at which time it will determine with the remaining parties an appropriate schedule.

SO ORDERED.

Dated: February 3, 2011             /s/ S. Arthur Spiegel
                                    S. Arthur Spiegel

                                        United States Senior District Judge